UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MIRANDA QUARLES, | ) |
| | ) |
|    Plaintiff, | )    Case No. 3:25-cv-00020-GFVT |
| | ) |
| v. | ) |
| | )    **MEMORANDUM OPINION** |
| QUARLES FAMILY REVOCABLE | )    **&** |
| LIVING TRUST, ROGER QUARLES, | )    **ORDER** |
| TRUSTEE, | ) |
| | ) |
|    Defendant. | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion to Dismiss filed by Defendant Quarles Family Revocable Trust. [R. 4.] In the Trusts' view there are indispensable parties that must be included in this boundary line dispute who, if included, would destroy the Court's subject matter jurisdiction. For the reasons that follow, the Trust's Motion to Dismiss **[R. 4]** is **GRANTED**.

**I**

Defendant Quarles Family Revocable Trust (the "Trust"), for which Rodger Quarles serves as sole trustee, owns a parcel of land located at 1480 Old U.S. 60, Frankfort, Kentucky 40601. [R. 4 at 1–2.] Plaintiff Miranda Quarles, a Texas resident, owns the adjacent parcel at 1280 Old U.S. 60. *Id.* at 2. On November 26, 2024, the Franklin District Court issued an order authorizing the Trust to construct a boundary line fence along the shared property line. *Id.* at 4. Subsequently, a dispute arose between the parties regarding the precise location of the boundary. *Id.*

On April 24, 2025, Miranda Quarles filed this quiet title action, asserting ownership over a portion of the land in dispute, which is less than one acre. [R. 1.] The same boundary line

dispute is also the subject of a related case pending before this Court, *Quarles Family Revocable Trust v. Miranda Quarles*, No. 3:25-cv-00026-GFVT, which was removed from state court. In that action, both parties submitted competing surveys to support their respective boundary claims. The Trust retained Monty Rhody, a local surveyor, who concluded that resolution of the dispute may affect the property rights of Eveli Jerabeck, a minor who owns the neighboring parcel at 1405 Old U.S. 60 through her guardian, Steve Jerabeck. [No. 3:25-cv-26-GFVT, R. 5-1 at 2.] Jerabeck is also named as a co-defendant in the related action. In contrast, Miranda Quarles submitted an affidavit from her own surveyor, Anthony J. Sickles, who opines that "Jerabeck has no interest in the boundary dispute." [No. 3:25-cv-26-GFVT, R. 1-1.]

On May 19, 2025, the Trust moved to dismiss this action for lack of subject matter jurisdiction, asserting that Jerabeck is a necessary party whose joinder would destroy complete diversity due to her Kentucky citizenship, and in the alternative, that the amount in controversy does not exceed $75,000. [R. 4 at 5.] On August 11, 2025, the Court held an evidentiary hearing and heard testimony from both surveyors on the boundary lines and property parcels that are at issue in this case. [R. 15; R. 16.]

II

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. Fed. R. Civ. P. 12(b)(1). When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Motions under Rule 12(b)(1) "are categorized as either a facial attack or a factual attack." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). "Under a facial attack, all of the allegations in the complaint must be taken as true. . . . Under a factual attack, however, the court can actually

weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 440 (6th Cir. 2012)).

Here, it seems the Trust is bringing a factual attack. As such, the Court may consider evidence beyond the pleadings in assessing jurisdiction. Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010); 28 U.S.C. §§ 1331, 1332. Neither party asserts the existence of a federal question. Rather, the disputed questions are that of diversity and amount in controversy. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

### A

With respect to the first issue, concerning diversity of parties, the Trust has not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named Plaintiff (Miranda Quarles) in this action. Rather, the Trust contends that complete diversity of citizenship among the parties cannot be established because Eveli Jerabeck, a single minor by Steve Jerabeck her Guardian, is a Kentucky citizen and an indispensable party. [R. 4 at 5.] The Trust maintains that Jerabeck's joinder would destroy the complete diversity among parties required by 28 U.S.C. § 1332(a)(1). *Id.*

Federal Rule of Civil Procedure 19 governs whether a party is indispensable. *Wurtland Nursing & Rehab., LLC v. Harvey*, 621 F. Supp. 3d 805, 810 (E.D. Ky. 2022) ("Rule 19 deals with what were historically known as 'necessary' and 'indispensable' parties.") In determining whether a person is an indispensable party under Rule 19, the Sixth Circuit applies a three-step analysis. *See Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993); *Glancy*

*v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). At the first step, courts "determine whether a person is necessary to the action and should be joined if possible." *Keweenaw Bay Indian Cmty.,* 11 F.3d at 1345; *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763–64 (6th Cir. 1999). This is determined through Rule 19(a), which provides that a party is indispensable if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "If the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary." *Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO*, 822 F.2d 613, 618 (6th Cir. 1987).

If, however, an absent person or entity is a necessary party under Rule 19(a), the Court must proceed to the second step of the test. At the second step, "the court must next consider whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001); *Am. Express Related Servs. Co. v. Bank One-Dearborn, N.A.*, 195 Fed. Appx. 458, 460 (6th Cir. 2006). Finally, the Court must evaluate "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable" under Rule 19(b). *Soberay Mach. & Equip. Co.*, 181 F.3d at 770; *PaineWebber*, 276 F.3d at 220 ("Dismissal should occur only if an Indispensable party is not subject to personal jurisdiction or cannot be joined without eliminating the basis for subject

matter jurisdiction."). Rule 19(b) provides four factors to be considered at the third step of the analysis. Fed. R. Civ. P. 19(b)(1)–(4).

Here, the Trust argues that Jerabeck, who owns property located at 1405 Old US 60, Frankfort, Kentucky 40601, which is adjacent to the Quarles Plat, is an indispensable party because the boundary line in controversy in this case makes up the western boundary of the Jerabeck Tract and the ultimate determination and location of the boundary line will affect Jerabeck's property rights. [R. 4 at 5.] As such, the Trust contends, because Jerabeck is a citizen of Kentucky, the addition of this necessary party will destroy diversity jurisdiction. *Id.*

Whether Jerabeck's interest is actually implicated by the boundary determination is the subject of a genuine factual dispute. The parties have submitted conflicting affidavits from surveyors. Miranda Quarles, in her notice of removal for the sister case of this action (No. 3:25-cv-00026-GFVT) attaches the affidavit of surveyor Anthony J. Sickles, who opines that "Jerabeck has no interest in the boundary dispute." [No. 3:25-cv-00026-GFVT. R. 1-1.] The Trust counters with the affidavit of surveyor Monty Rhody, who states that the court's boundary determination "will affect the location of the Jerabeck Property." [No. 3:25-cv-00026-GFVT. R. 5-1 at 2.] Having heard testimony from both surveyors on the boundary line, the Court is convinced that Jerabeck and her property are implicated by this boundary line dispute. Her land directly abuts the disputed line and a final determination of the line's placement is likely to affect her property. The requirements of Rule 19(a) are therefore satisfied.

Regarding the second step, as stated above, once an absentee is deemed "necessary," the Court must ask whether the absentee (i) is subject to personal jurisdiction and (ii) can be joined without destroying subject-matter jurisdiction. *PaineWebber,* 276 F.3d at 200; *Am. Express Related Servs. Co.,* 195 Fed. Appx. At 460. Because Jerabeck's residence is in Kentucky, the

Court plainly possesses general personal jurisdiction over Jerabeck. As such, joinder is possible. However, joinder must not "eliminate the basis for subject-matter jurisdiction." *PaineWebber*, 276 F.3d at 200. Under § 1332(a)(1), diversity requires complete diversity and Jerabeck's joinder would indeed destroy diversity. Hence joinder is not feasible within the meaning of Rule 19.

Addressing the third step, because joinder is infeasible, the Court must decide whether, "in equity and good conscience," the case should proceed without Jerabeck. *Soberay Mach. & Equip. Co.*, 181 F.3d at 770; *PaineWebber*, 276 F.3d at 220. To do so, this Court must balance the following factors: (1) the extent to which a judgment rendered in Jerabeck's absence might prejudice her or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in Jerabeck's absence would be adequate; and (4) whether the Plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Here these factors favor dismissal. The parties are free to pursue this matter in state court (indeed the removed action indicates their intention to do just that) and a judgment in Jerabeck's absence would essentially leave the boundary line dispute still unsettled. Under Kentucky law, record owners of a disputed tract of land are indispensable parties in a quiet title action. *See Gilland v. Dougherty*, 500 S.W.3d 217 (Ky. App. 2016) (reversing trial court's judgment because the heirs of the record owners were not joined). *Gilland* makes clear that "the plaintiff's burden in a quiet title action to prove ownership and possession of the land cannot be satisfied while other non-parties have a claim to ownership." 500 S.W.3d at 222. *See also Baker v. Weinberg*, 266 S.W.3d 827 (Ky. App. 2008) (holding that the record owners in a quiet title

action are required to be named as parties to the action); *Lange v. City of Park Hills*, No. 2018-CA-001233-MR, 2019 WL 3374795 (Ky. Ct. App. July 26, 2019) (dismissing declaratory judgment action for failing to join adjacent landowners). As Jerabeck's land is implicated by this suit, a judgment in her absence would be inadequate.

### B

Turning to the second issue raised by the Trust's motion, the Court must determine whether the amount in controversy in this quiet title action satisfies the $75,000 threshold required by 28 U.S.C. § 1332. The Trust contends that it does not, arguing that the value of the disputed tract falls well below that amount. [R. 4 at 7.] The Trust argues that, according to research, the average value for an acre of agricultural land in Kentucky in 2024 was $5,300 and, even assuming that the value has doubled in the past year, the area at issue is less than a single acre leaving the amount in controversy as no more than a maximum of $5,300. *Id.* Alternatively, the Trust argues that the entire value of the property is $490,000 according to the Franklin County Property Value Administration and as such one-half acre would be $1,531.25 ($490,000 ÷ 160 acres ÷ 2 = $1,531.25). *Id.* at 8.

The proper method for calculating the amount in controversy in a quiet title action, particularly one involving a narrow boundary dispute, is far from well-settled and has not been extensively addressed by courts. However, courts agree on the general principle that the amount in controversy in quiet title or declaratory judgment actions is often measured by the value of the object of the litigation:

> When construing the amount in controversy requirement of a federal statute limiting the appellate jurisdiction of the federal courts, the Supreme Court once stated that "a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, *only by the value of the property affected*."

*Smith v. Adams*, 130 U.S. 167, 175 (1889) (emphasis added). Although this case is over 125 years old, several courts have continued to rely on that reasoning, but have done so with little elaboration. *See e.g., Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory ... relief, it is well established that *the amount-in-controversy is measured by the value of the object of the litigation*.") (emphasis added); *Maida v. Retirement and Health Services Corp.*, 36 F.3d 1097, 1994 WL 514521, *2 (6th Cir. Sept. 19, 1994) (Unpub. Disp.) ("In an action to quiet title, however, the amount in controversy is the value of the land."); *see also* 14A Wright, Miller and Cooper Federal Practice and Procedure, § 3702 p. 40.

Applying that general principle here would seem to support the Trust's position: if only the half-acre tract is in dispute, regardless of how the value is calculated, falls short of the $75,000 jurisdictional threshold. However, the analysis is not so simple. A deeper difficulty lies in defining what precisely constitutes the "property affected" or "object of the litigation." At first glance, it appears that the object of litigation is the disputed sliver of land near the property boundary. That view would align with the Trust's valuation argument and with a typical reading of *Smith* and its progeny. But, some courts have framed the "object of the litigation" in broader terms, particularly where the plaintiff alleges that an unresolved title issue clouds the entire property, thereby impairing its marketability and/or impending sale.

In *Planning and Development Dept. v. Daughters of Union Veterans of Civil War*, the Eastern District of. Michigan held that (1) "the 'object of the litigation' is determined by the relief sought by the plaintiff, and the value of the object of the litigation (the amount-in-controversy) is the potential loss to the plaintiff if relief is denied," and (2) that the amount in controversy exceeded $75,000 where plaintiffs alleged ongoing clouds on their title that

precluded them from selling a building at market value. 2005 WL 3163393, at *6 (E.D. Mich. 2005). Thus, it seems that when a quiet title action has implications for the full use or disposition of the property, such as precluding its sale, the value of the entire property may be at stake. *See also Voss v. Quicken Loans LLC,* No. 1:20-CV-756, 2021 WL 3810384, at *3 (S.D. Ohio Aug. 26, 2021) (explaining that the Plaintiff's complaint does not allege that there is any continuing "cloud on the title" that he seeks to clear in order to sell or lease the property, or that would make the entire value of the property the "object of suit").

Applying those principles here, Plaintiff Miranda Quarles seeks to quiet title only as to the disputed sliver of land. [R. 1.] She does not allege that the dispute clouds title to the entirety of the 160-acre parcel owned by the Trust. Yet, it is the Trust who claims that the *lis pendens* placed on the property by Quarles and the ongoing legal dispute clouds title to the full property and precludes sale. [R. 8 at 2.] It cannot have it both ways. The Trust's assertions regarding the dispute's effect on its ability to sell the entire estate suggest that the litigation impacts more than just the boundary line; it clouds title to the whole property. Therefore, the amount in controversy requirement is satisfied.

**C**

Even if Jerabeck were not a necessary party, abstention would be appropriate in this case under the principles set forth in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976). In order to determine whether abstention under *Colorado River* is appropriate, the Court must first determine whether there are parallel actions proceeding in both state and federal courts. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). If "the parities are substantially similar," and "the claims raised in both suits are predicated on the same allegations as to the same material facts," the actions "will come close enough to count as

parallel." *Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 393 (6th Cir. 2017) (quoting *Romine*, 160 F.3d at 340).  Here there is such a parallel action in state court following this Court's remand of the related action 3:25-cv-00026-GFVT.  That action contains the same parties (and in fact includes the indispensable party excluded here) and seeks to adjudicate the exact same boundary line dispute that is at issue in this case.  The requisite parallelism is thus satisfied.

When actions are parallel, the Court must then balance eight separate factors to determine whether abstention would be appropriate:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained ... (5) whether the source of governing law is state or federal ... (6) the adequacy of the state court action to protect the federal plaintiff's rights ... (7) the relative progress of the state and federal proceedings ... and (8) the presence or absence of concurrent jurisdiction ....

*Romine*, 160 F.3d at 340-41.  These factors are not a checklist, but rather considerations for the Court when using its discretion to abstain in a matter.  In this case they favor abstention.

First, this is a case involving property over which the state court can assume jurisdiction.  Second, piecemeal litigation is a real threat in cases such as this that involve a limited object in dispute – property – that cannot easily be subject to conflicting judgments.  Indeed, *Colorado River* itself dealt with property rights over water, effectively a "highly interdependent" zero-sum game.  *See Colorado River*, 424 U.S. 804-806, 819; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) (Noting that the "paramount" consideration at issue in *Colorado River* was "the danger of piecemeal litigation.").  Third, the source of governing law is entirely state law.  Fourth, the state court action can adequately protect the

plaintiff's rights (and will in fact protect the rights of other parties that cannot be joined here). And lastly, the state court has concurrent jurisdiction.

Of the remaining factors, they are at most neutral as to abstention rather than against it. Neither forum is more or less convenient to the parties. The Court now turns to consideration of the fourth and seventh factors, with the focus on "the relative progress of the state and federal proceedings." *Romine*, 160 F.3d at 340-41; *See also Moses,* 460 U.S. at 21–22 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Colorado River* illustrates this point well. There, the federal suit was actually filed first. Nevertheless, we pointed out as a factor favoring dismissal 'the apparent absence of any proceedings in the District Court' other than the filing of the complaint, prior to the motion to dismiss."). While this federal action was filed first, both this action and 3:25-cv-26 commenced near in time, with little progress made in either. Thus, factors four and seven are largely neutral.

With the relevant factors all either neutral or counseling in favor of abstention, the Court sees abstention as proper in this case, were it otherwise possessed of the jurisdiction to adjudicate it. In the Sixth Circuit a stay is typically the manner in which federal courts should apply *Colorado River* abstention. *Bates v. Van Buren Twp.*, 122 F. App'x 803 (6th Cir. 2004). Nevertheless, the Court must dismiss this action on other grounds – its lack of subject matter jurisdiction – rendering a stay impossible.

### III

Federal courts are courts of limited jurisdiction. While on the face of the complaint in this case the parties are diverse, in actuality an indispensable party must be included to resolve the boundary line dispute at issue. Yet doing so would eliminate complete diversity and thus this

Court's jurisdiction. Accordingly, the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Motion to Dismiss for Lack of Jurisdiction **[R. 4]** is **GRANTED**;

2. All pending motions are **DENIED as moot**; and

3. This matter is **DISMISSED without prejudice** and **STRICKEN** from the Court's active docket.

This the 21st day of October, 2025.

Gregory F. Van Tatenhove
United States District Judge